1   RICK D. ROSKELLEY (STATE BAR NO. 3192)
    LITTLER MENDELSON
2   3960 Howard Hughes Pkwy, Suite 300
    Las Vegas, NV 89109
3   Telephone:    702-862-8800
    Facsimile:     702-862-8811
4
    LYNNE C. HERMLE (Admitted *Pro Hac Vice*)
5   JOSEPH C. LIBURT (Admitted *Pro Hac Vice*)
    JESSICA R. PERRY (Admitted *Pro Hac Vice*)
6   LEAH L. SPERO (Admitted *Pro Hac Vice*)
    ORRICK, HERRINGTON & SUTCLIFFE LLP
7   1000 Marsh Road
    Menlo Park, CA 94025
8   Telephone:    650-614-7400
    Facsimile:     650-614-7401
9
    Attorneys for Defendant
10  TRENDWEST RESORTS, INC.

11                  UNITED STATES DISTRICT COURT

12                   DISTRICT COURT OF NEVADA

13

14  TRENDWEST RESORTS CONSOLIDATED          Case No.  CV-S-05-0605-RCJ (LRL)
15  MATTERS:

16  Williams, et al. v. Trendwest Resorts, Inc., et al.

17  Wiley, et al. v. Trendwest Resorts, Inc., et al.      **DEFENDANT TRENDWEST
                                                          RESORTS, INC.'S MOTION FOR
18                                                        PARTIAL SUMMARY
                                                          JUDGMENT, OR IN THE
19                                                        ALTERNATIVE SUMMARY
                                                          ADJUDICATION, THAT
20                                                        TRENDWEST QUALIFIES AS A
                                                          RETAIL OR SERVICE
21                                                        ESTABLISHMENT

22

23

24

25

26

27

28

1    Defendant Trendwest Resorts, Inc. ("Trendwest") hereby moves this Court for an

2    Order granting partial summary judgment, or in the alternative, summary adjudication, that

3    Trendwest is a "retail or service establishment" within the meaning of the Fair Labor Standards

4    Act ("FLSA") retail sales exemption.

5    This motion is based on the memorandum of points and authorities filed herewith,

6    the declarations of Leah L. Spero, Frank Ale,[1] Peggy Fry, and Kristen Peacock in support of this

7    Motion for Partial Summary Judgment, exhibits attached thereto, the papers on file in this action,

8    any matter of which the Court may or must take judicial notice, oral argument at the hearing, and

9    any other matter which the Court deems appropriate.

10

11   Dated:  May 22, 2007                       LYNNE C. HERMLE
                                                 JOSEPH C. LIBURT
12                                               JESSICA R. PERRY
                                                 LEAH L. SPERO
13                                               ORRICK, HERRINGTON & SUTCLIFFE LLP

14

15                                               _____/s/_____
                                                 Joseph C. Liburt
16                                               Attorneys for Defendant

17                                               TRENDWEST RESORTS, INC.

18

19

20

21

22

23

24

25

26

27   _____
     [1] Trendwest filed the declaration of Frank Ale on November 16, 2006 (Docket No. 86), and re-files a copy
28   herewith as Exhibit A to the Declaration of Leah Spero in Support of Defendant Trendwest Resorts, Inc.'s
     Motion for Partial Summary Judgment or in the Alternative Summary Adjudication ("Spero. Dec.").

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ............................................ 2

II.   BACKGROUND ................................................................................................. 3

    A.    Plaintiffs' Claims in the Consolidated Cases .................................... 3

    B.    Trendwest Sells Vacation Credits and Other Products ..................... 4

III.  STANDARD FOR PARTIAL SUMMARY JUDGMENT ........................................ 7

IV.   PLAINTIFF SALES REPRESENTATIVES AND MANAGERS QUALIFY FOR THE FLSA RETAIL SALES EXEMPTION ............................................................. 8

    A.    Trendwest is a Retail and/or Service Establishment ........................ 9

        1.    Trendwest Sells Goods and Services ..................................... 9

        2.    More than 75% of Trendwest's Sales of Vacation Credits are Not for Resale ......................................................................... 10

        3.    Trendwest's Vacation Credits are Recognized as Retail in the Vacation Ownership Industry .............................................. 11

            a.    Trendwest Sells and is "Open to" the General Public .................. 12

            b.    Trendwest Serves the Community's Everyday Needs ................. 13

            c.    Trendwest is at the End of the Distribution Stream ...................... 14

            d.    Trendwest's Vacation Credits are Recognized as Retail in the Industry ............................................................................. 14

    B.    The Rate of Pay Issue will be Decided for Each Plaintiff Separately ................. 16

    C.    Trendwest will Show That More Than 50% of Total Earnings in a Representative Period Come From Commissions ................................ 18

V.    CONCLUSION ................................................................................................. 19

**TABLE OF AUTHORITIES**

Page

**CASES**

*Bolick v. Brevard County,*
    937 F. Supp. 1560 (M.D. Fla. 1996) ................................................................ 7

*Cooke v. Gen. Dynamics Corp.,*
    993 F. Supp. 50 (D. Conn. 1997) ..................................................................... 7

*Gatto v. Mortgage Specialists of Illinois,*
    442 F. Supp. 2d 529 (N.D. Ill. 2006) ............................................................. 16

*Gieg v. DDR, Inc.,*
    407 F.3d 1038 (9th Cir. 2005) ................................................................. 10, 11

*Hood v. Mercy Healthcare Arizona,*
    23 F. Supp. 2d 1125 (D. Ariz. 1997) ............................................................... 7

*Interstate Commercial Bldg. Servs., Inc. v. Bank of America,*
    23 F. Supp. 2d 1166 (D. Nev. 1998) ................................................................ 7

*Lies v. Farrell Lines, Inc.,*
    641 F.2d 765 (9th Cir. 1981) ........................................................................... 7

*Luther v. Z. Wilson, Inc.,*
    528 F. Supp. 1166 (S.D. Ohio 1981) .............................................................. 14

*Martin v. Refrigeration School, Inc.,*
    968 F.2d 3 (9th Cir. 1992) ............................................................................. 14

*Onque v. Cox Commc'ns Las Vegas Inc.,*
    2:04-CV-558 BES-GWF, 2006 U.S. Dist. LEXIS 67153 (D. Nev. Sept. 19,
    2006) ............................................................................................................ 7, 9

*Reich v. Cruises Only, Inc.,*
    No. 95-660 Civ. Orl. 19, 1997 U.S. Dist. LEXIS 23727 (M.D. Fla. June 4,
    1997) .............................................................................................................. 13

*Schwind v. EW & Assocs.,*
    371 F. Supp. 2d 560 (S.D.N.Y. 2005) ............................................................ 16

*Viciedo v. New Horizons Computer Learning Center of Columbus, Ltd.,*
    246 F. Supp. 2d 886 (S.D. Ohio 2003) ........................................................... 17

*Walton v. United Consumers Club,*
    786 F.2d 303 (7th Cir. 1986) .......................................................................... 16

**STATUTES**

29 C.F.R.  § 779.414 ........................................................................................ 18

29 C.F.R.
    § 779.313 ......................................................................................................... 9

29 C.F.R.
    § 779.317 ........................................................................................................ 14

29 C.F.R.
    § 779.318 ..................................................................................................... 9, 14

29 C.F.R.

- ii -

# TABLE OF AUTHORITIES
### (continued)

Page

§ 779.319 ................................................................................ 12

29 C.F.R.
§ 779.322 ................................................................................. 9

29 C.F.R.
§ 779.323 ............................................................................... 14

29 C.F.R.
§ 779.324 ................................................................................. 9

29 C.F.R.
§ 779.331 .......................................................................... 10, 11

29 C.F.R.
§ 779.382 ............................................................................... 14

29 C.F.R.
§ 779.417(a) ........................................................................... 18

29 C.F.R.
§ 779.417(b) ........................................................................... 18

29 C.F.R.
§ 779.417(d) ........................................................................... 18

29 C.F.R.
§779.383 ................................................................................ 14

29 CFR
§ 779.320 ............................................................................... 14

29 CFR §§ 779.316 ................................................................. 14

29 U.S.C.
§ 203(i) ................................................................................... 9

29 U.S.C.
§ 206(i)(1) ................................................................... 16, 17, 18

29 U.S.C.
§ 207(a) ................................................................................... 8

29 U.S.C.
§ 207(i) ................................................................................... 8

29 U.S.C.
§ 779.318(a) ............................................................... 9, 12, 13, 14

California Business & Professions Code
§ 17200 ................................................................................... 8

DOL Field Operations Handbook
§ 21b03(a) ............................................................................. 12

DOL handbook,
§ 21b03(b) ............................................................................. 12

Federal Rule of Civil Procedure
§ 56(b) ..................................................................................... 7

OHS West:260137997.5

## TABLE OF AUTHORITIES
### (continued)

Page

Federal Rules of Civil Procedure
   § 56(c) ................................................................................................................... 7

OHS West:260137997.5

DEFENDANT TRENDWEST RESORTS, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(CV-S-05-0605-RCJ-LRL)

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT**

3          Plaintiffs' claims for overtime pay under the FLSA raise the issue of whether

4    Plaintiffs are actually covered by the FLSA overtime provisions, or whether they meet one or

5    more of the overtime exemptions, such as the retail sales, outside sales, administrative, executive,

6    and/or highly compensated exemptions.  The applicability of the "retail sales" exemption is

7    appropriate for partial summary judgment because, as a matter of law, Trendwest qualifies as a

8    "retail or service establishment" for purposes of the exemption.  Once this Court determines the

9    "retail or service establishment" issue , the inquiry into whether each FLSA Plaintiff meets the

10   other elements of the exemption becomes a factual matter that will be settled by review of hours

11   worked, payroll records, and mathematical calculations.  Resolution of the "retail or service

12   establishment" issue thus streamlines and simplifies the FLSA issues here.

13         As sales representatives and sales managers, Plaintiffs were involved in selling

14   Trendwest's product:  vacation ownership credits.  These credits entitle the purchasers – who

15   become "members" – to stay at any of Trendwest's and its affiliates' resorts or to purchase

16   cruises, tour packages, theme park tickets, restaurant gift cards, and other goods and services.

17   Contrary to Plaintiffs' assertions that Trendwest sells "real estate," the company's goods and

18   services are akin to those offered by health clubs, hotels, travel agencies and other recognized

19   "retail or service establishments."  As demonstrated herein, Trendwest meets the criteria for a

20   "retail or service establishment."  Accordingly, this Court should grant partial summary judgment

21   that Trendwest qualifies as a retail or service establishment for purposes of the "retail sales"

22   FLSA overtime exemption.

23

24

25

26

27

28

- 2 -

II.     **BACKGROUND**

    A.     **Plaintiffs' Claims in the Consolidated Cases[2]**

           Plaintiffs, a group of sales and administrative employees, including managers and non-managers, raise the following three sets of claims in these consolidated cases:

    o   FLSA claims for overtime pay and minimum wage (29 U.S.C. §§ 207(a) & 213(a));

    o   Nevada state law claims for overtime pay, minimum wage, rest period violations, and waiting time penalties (N.R.S. §§ 608.016, 608.100, 608.250, 608.018, & 608.019); and

    o   California state law claims for overtime pay, chargeback restitution, unfair business practices regarding chargebacks, failure to reimburse business expenses, and waiting time penalties (Cal. B&P § 17200 with 29 U.S.C. §§ 207(a) & 213(a), Cal. Labor Code §§ 203, 204, 221, 225, 300, 400-410, 2802, & Cal. Civ. Code § 1670.5 with Cal. B&P § 17200).

*See* Docket Nos. 1 (*Williams* complaint); 58 (*Porter* amended complaint).

           On December 1, 2005, plaintiffs filed a motion for circulation of notice to a class of similarly situated individuals described simply as "sales staff." *See* Docket No. 24.  On September 29, 2006, Magistrate Judge Leavitt recommended conditional certification of a class of "all current and former employees of Trendwest whose primary or exclusive duty is or was conducting sales at or reporting to premises maintained and operated by defendant; who were paid on a commission only or a salary plus commission basis; who worked at any California or Nevada location; and, who were employed anytime during the last three years." Docket No. 75, p. 11.  This class description includes four groups of employees:  (1) Sales Associates, (2) Sales Assistant Managers and Managers, (3) Project Directors, and (4) Developer Representatives or

---

[2] Plaintiffs filed their complaint in *Williams, et al. v. Trendwest Resorts, Inc.,* in Nevada state court on April 19, 2005.  Docket No. 1.  Trendwest removed the case to this Court on May 13, 2005.  *Id.*  On October 12, 2005, this Court ordered consolidation of this case with FLSA claims in *Wiley, et. al. v. Trendwest Resorts, Inc.,* which were pending in the United States District Court of Northern California. Docket No. 19.  On June 20, 2006, this Court issued an order allowing plaintiffs to amend their complaint in *Wiley* to add California state-law claims (and with this amendment, plaintiffs substituted Porter as the named plaintiff for Wiley).  Docket No. 66.

DEFENDANT TRENDWEST RESORTS, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(CV-S-05-0605-RCJ-LRL)

1   Verification Loan Officers ("VLOs") and Head VLOs.  *See* Spero Dec., ¶ 5, Ex. B.

2          Sales Associates sell Trendwest's products, vacation ownership credits (also

3   known as "timeshares"), to customers.  *See* Spero Dec., Ex. A (Declaration of Frank Ale), ¶¶ 3-

4   14.  Sales Assistant Managers and Managers oversee, train, and discipline the Sales Associates,

5   and engage with customers to answer questions and assist in closing sales.  *Id.*  Project Directors

6   manage the sales office, including the administrative and sales teams, and they do not generally

7   get involved in the sales process with customers.  *Id.*  VLOs also do not engage in the selling

8   process; they review and complete the sales paperwork after a customer has purchased the

9   vacation credits from the Sales Representative.  *Id.* at ¶ 16.  Head VLOs manage the other VLOs

10  at the sales office.  *Id.*

11          **B.     Trendwest Sells Vacation Credits and Other Products**

12          Trendwest sells vacation ownership credits.  Declaration of Peggy Fry ("Fry

13  Dec."), ¶ 4.  Members purchase a minimum of 6,000 annually renewing credits that entitle them

14  to stay at any of Trendwest's and its affiliates' resorts on a first-come, first served basis.  *Id.*[3]  The

15  number of credits needed for a night's stay at any of the resorts depends upon the resort location,

16  the size of the unit (ranging from a studio to 1-, 2- and 3-bedroom units), the night of the week,

17  and the time of year.  *Id.*  As an example, with the minimum number of 6,000 credits, a member[4]

18  could stay for one week in a two-bedroom unit in Trendwest's South Shore resort in Lake Tahoe,

19  California.  *Id.*  The majority of members, however, stay three to four nights at a time, on

20  average, rather than a full week.  *Id.*, ¶ 8.

21          Trendwest also sells an "Experience" product for those who want to try out the

22  benefits of the vacation ownership system on a one-year, trial basis before deciding whether to

23  commit to full vacation ownership.  *Id.*, ¶ 10.  Customers purchase a minimum of 6,000 credits,

24  which entitles members to a five-night mid-week stay or a three-night weekend stay at a

25  _____

26  [3] Trendwest members may also use their vacation credits at other resorts not owned by Worldmark and not operated by Trendwest.

27  [4] Trendwest uses the terms "owner" and "member" to describe the purchasers of their products
28  interchangeably.  "Owners" own vacation credits that entitle them to "membership" in the vacation resort network provided by Trendwest.

DEFENDANT TRENDWEST RESORTS, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(CV-S-05-0605-RCJ-LRL)

1  Trendwest resort within one year of purchase and costs approximately $695. Fry Dec., ¶ 10.

2  Customers may also purchase 8,000 or 10,000 credits. *Id.* With 10,000 credits, a customer can

3  stay seven nights at a resort, or use the credits for multiple shorter stays. *Id.*

4          Trendwest is not a "real estate company," as that phrase is used in Department of

5  Labor regulations. In other words, Trendwest members do not purchase an ownership in real

6  estate as would someone buying a house. *See id.*, ¶ 5 ("Trendwest does not sell deeded

7  property."). The real estate that is Trendwest's resorts is owned by a nonprofit club, WorldMark

8  (Trendwest manages the properties, the vacation credit sales and marketing, and the reservation

9  system). *Id.*, ¶ 2. Rather than buying real estate, members purchase a membership that primarily

10  entitles them to stay at any of Trendwest's resorts on a first-come, first-served basis, along with

11  certain other privileges. *Id.*, ¶ 5, Ex. B, p. 4. All of Trendwest's annual dollar volume comes

12  from the sales of its retail vacation credit product. *Id.*, ¶ 4.

13          The experience of a Trendwest member is markedly different from a customer

14  who purchases a piece of property from a real estate agent. For example, Trendwest assigns a

15  member a unit of the desired size at the time the member makes the reservation. *Id.*, ¶ 5, Ex. B, p.

16  21. Some additional key (and undisputed) aspects of Trendwest's business practices that confirm

17  it is a retail establishment and that distinguish it from the experience of someone buying property

18  from a real estate agent are the following:

19      ○  Members may request specific rooms, but may only book the room if it is available at

20         the requested time. *Id.*, ¶ 6, Ex. B, p. 21.

21      ○  Members may not keep any personal property in the unit after they check out. *Id.*, Ex.

22         B, p. 24.

23      ○  Members may not bring animals or pets onto resort properties, must refrain from

24         smoking in designated areas, and must abide by other resort regulations. *Id.*

25      ○  Members do not have control over the furnishings or decorating in any unit and must

26         reimburse Trendwest for any damage to the unit and its contents. *Id.*

27      ○  Members must observe occupancy limits that apply to the units. *Id.*, Ex. B, p. 23.

28      ○  Trendwest reserves the right to enter any unit, at any time, as necessary. *Id.*, Ex. B, p.

24.

 o Trendwest resorts provide services and amenities, including swimming pools, spas, fitness rooms, arcade games, boutiques, business centers, and computer and internet terminals. Fry Dec., Exs. A & C.

 o Trendwest reserves the right to rent out unreserved units to non-members. *Id.*, Ex. B, p. 24-25.

Members also enjoy several retail uses for their vacation credits other than lodging. They may use credits to purchase cruises, houseboat rentals, RV camp site rentals, tour packages, apparel, travel gear, movie tickets, theme park tickets, and gift cards redeemable at Starbucks, Outback Steakhouse, Applebee's, and other restaurants. *Id.*, Ex. D. On average, members spend 11-14 percent of their points on non-resort goods and services. *Id.*, ¶ 9.

Trendwest intends that members realize the value of their credits by vacationing with family and friends at Trendwest or affiliate resorts, or by spending credits on goods and services for their enjoyment. *Id.*, ¶ 11. Marketing documents, employee handbooks, and member sales contracts thus consistently and clearly emphasize that Trendwest discourages members from purchasing credits for investment or re-sale purposes, and employees are expected to communicate this to customers. *Id.*, Exs. E & F. Trendwest does not facilitate or advise on the resale of members' vacation credits, and in fact, only 1 percent of members resold their vacation credits in 2006. *Id.*, ¶ 12.

Trendwest sells its products to the public at large. *Id.*, ¶ 13. All first-time prospective members are required to take a tour at one of the "on site" sales offices, which are located on Trendwest resorts, or at an "off site" office located in a shopping plaza or other setting. *Id.* Most customers book their tour ahead of time through telemarketers and other marketing agents, but customers interested in Trendwest's product may also contact Trendwest's offices through its "Ask Shawn" website. *Id.*, Ex. H. When customers arrive at the sales office, administrative staff greets them and provides them with an initial questionnaire. *Id.*, ¶ 13. During the scheduled tour, prospective members meet one-on-one with a Sales Representative to discuss vacation habits and preferences. *Id.* If a prospective member decides to purchase

- 6 -

1  vacation credits, he or she discusses with the Sales Representative the number of credits the

2  customer would like to purchase and financing details. Fry Dec., ¶ 13. The only qualification for

3  membership is that the customer have the ability to pay the down payment. *Id.*, ¶ 14.

4  **III.    STANDARD FOR PARTIAL SUMMARY JUDGMENT**

5            Federal Rule of Civil Procedure 56(b) allows "a party against whom a claim … is

6  asserted … [to] move … for a summary judgment in the party's favor as to all <u>or any part</u>

7  <u>thereof</u>." Fed. R. Civ. P. 56(b) (emphasis added). Partial summary judgment is "'a determination

8  before the trial' that is intended to 'avoid a useless trial of facts and issues over which there was

9  really never any controversy and which would tend to confuse and complicate a lawsuit.'" *Onque*

10 *v. Cox Commc'ns Las Vegas Inc.*, 2:04-CV-558 BES-GWF, 2006 U.S. Dist. LEXIS 67153, at *8

11 (D. Nev. Sept. 19, 2006) (granting partial summary judgment as to proper legal formula for

12 calculating overtime pay in an FLSA case; citing *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769

13 n.3 (9th Cir. 1981)). This District has recognized that "summary adjudication of an issue within a

14 claim … is permissible under the Federal Rules of Civil Procedure." *Interstate Commercial Bldg.*

15 *Servs., Inc. v. Bank of America*, 23 F. Supp. 2d 1166, 1176 (D. Nev. 1998) (granting partial

16 summary judgment on issue of amount owed under a contract). Partial summary judgment "shall

17 be rendered forthwith" where, as here, "the pleadings, depositions, answers to interrogatories, and

18 admissions on file, together with the affidavits, if any, show that the moving party is entitled to

19 judgment as a matter of law." Fed. R. Civ. P. 56(c).

20           On motions for partial summary judgment, district courts have routinely analyzed

21 the applicability of individual prongs within FLSA exemption tests. *See Hood v. Mercy*

22 *Healthcare Arizona*, 23 F. Supp. 2d 1125, 1129, 1132 (D. Ariz. 1997) (deciding on a motion for

23 partial summary judgment that defendant employer's compensation structure met "salary-basis

24 test" for purposes of FLSA exemptions, but deferring analysis of the "duties test" of the FLSA

25 exemptions); *Cooke v. Gen. Dynamics Corp.*, 993 F. Supp. 50, 50, 55 (D. Conn. 1997) (same);

26 *Bolick v. Brevard County*, 937 F. Supp. 1560, 1570-72 (M.D. Fla. 1996) (finding that the

27 defendant was "entitled to partial summary judgment" on the "salary basis" test). This Court's

28 analysis of the applicability of the FLSA's retail exemption to Trendwest would be a similarly

1   appropriate single-prong, partial summary judgment issue.

2           As explained below, the resolution of the applicability of the retail sales exemption

3   to Trendwest would further the interests of judicial economy and efficiencies and be appropriate

4   for partial summary judgment at this stage in the litigation.  Because Trendwest meets its initial

5   burden of demonstrating the absence of any genuine issues of material fact and plaintiffs are

6   unable to establish the existence of an essential element, the Court should grant partial summary

7   judgment in Trendwest's favor.

8   **IV.     PLAINTIFF SALES REPRESENTATIVES AND MANAGERS QUALIFY FOR**
         **THE FLSA RETAIL SALES EXEMPTION**
9

10          Plaintiffs claim entitlement to overtime pay under the FLSA.  *See* Docket Nos. 1

11  (*Williams* complaint), ¶¶ 23-35; 58 (*Porter* amended complaint), ¶¶ 23-33 (hybrid FLSA-Cal.

12  B&P § 17200 claim); 29 U.S.C. § 207(a) (requiring overtime pay for certain employees).  The

13  "retail" exemption from the FLSA, which would preclude plaintiffs' recovery of overtime,

14  contains three requirements:[5]

15              (1) the employee must be employed by a retail or service establishment;

16              (2) the employee's regular rate of pay must exceed one and one-half times the
                    applicable minimum wage for every hour worked in a workweek in which
17                  overtime hours are worked; and

18              (3) more than half the employee's total compensation in a representative period
                    (not less than one month) represents commissions on goods or services.
19

20  29 U.S.C. § 207(i) (excluding retail sales employees from protections of § 207(a)).

21          With this motion, Trendwest seeks summary judgment on the first requirement:

22  that Trendwest is a "retail or service establishment."  As the discussion below shows, once the

23  Court settles this issue, the inquiry into whether each FLSA plaintiff meets the exemption for

24  relevant time periods becomes a simple factual matter that will be settled by payroll records and

25  mathematical calculations.  Thus, the "retail" issue is appropriate for partial summary judgment

26  _____

27  [5] This section does not address plaintiffs who held non-sales positions included in Magistrate Judge
    Leavitt's Report and Recommendation, including "Developer Representatives" and "Verification Loan
28  Officers."  *See* Docket No. 75, pp. 10-11.  While not addressed in this motion, these employees qualify
    under either the Executive FLSA exemption or the Administrative FLSA exemption, or both.

1   because it greatly streamlines the FLSA overtime issues. *See Onque*, 2006 U.S. Dist. LEXIS

2   67153, at *8.

### A.   Trendwest is a Retail and/or Service Establishment

4   To qualify as a "retail or service establishment" under the FLSA, (a) Trendwest

5   must engage in the sale of goods or services, (b) at least 75% of the annual dollar volume of sales

6   of goods or services must not be for resale, and (c) the sales must be recognized as retail sales or

7   service in the particular industry. 29 C.F.R. § 779.313. DOL regulations provide further

8   guidance as to the scope of this exemption by setting forth characteristics and examples of "retail"

9   establishments. *See* 29 C.F.R. § 779.318. DOL regulations also address what evidence may be

10  taken into account to determine whether the retail sales or service are "recognized as retail in the

11  industry." *See e.g.*, 29 C.F.R. §§ 779.322 & 779.324.

### 1.   Trendwest Sells Goods and Services

13  Trendwest's products, "vacation credits," clearly qualify as both goods and

14  services under the FLSA. The definitions section of the FLSA defines "goods" as "goods [],

15  wares, products, commodities, merchandise, or articles or subjects of commerce of any

16  character." 29 U.S.C. § 203(i). Service establishments, such as hotels and restaurants, provide

17  "services for the comfort and convenience of [the] public in the course of its daily living." 29

18  U.S.C. § 779.318(a). The DOL has found that some establishments, such as health clubs/fitness

19  facilities, qualify as both retail and service establishments because they provide a mix of retail

20  goods and services.

21  As described in the declaration of Peggy Fry, Trendwest's vacation credit product

22  functions as a good that members can trade for lodging, cruise, or tour services offered by

23  Trendwest, or for other goods such as apparel, travel gear, movie tickets, theme park tickets, and

24  gift cards. Fry Dec., Ex. D. Trendwest also provides "services" by way of its resort management,

25  including booking members' visits and providing on-site services to make members' stays more

26  comfortable. *Id.*, ¶ 6. Thus, Trendwest engages in the sale of both goods and services.

27

28

**2.** **More than 75% of Trendwest's Sales of Vacation Credits are Not for Resale**

Trendwest's timeshare sales are not "sales for resale," as defined by the FLSA regulations in 29 C.F.R. § 779.331.  A "sale for resale" is a sale "made for the purpose of immediate resale."  *Gieg v. DDR, Inc.*, 407 F.3d 1038, 1048 (9th Cir. 2005).  Even if a Trendwest member eventually resells his or her membership, the resale does not transform the nature of the initial transaction.  Instead, under the FLSA regulations, Trendwest's reasonable expectations govern the nature of the sale:

> A sale is made for resale where the seller knows or has reasonable cause to believe that the goods or services will be resold, whether in their original form, or in an altered form, or as a part, component or ingredient of another article. . . . Similarly, if at the time the sale is made, the seller has no knowledge or reasonable cause to believe that the goods are purchased for the purpose of resale, the fact that the goods later are actually resold is not controlling.

29 C.F.R. § 779.331; *see also Gieg*, 407 F.3d at 1049 (noting that "neither the dealer nor the customer enter[ed] into a [car] lease with the expectation … [that resale would occur]").

Trendwest intends that its customers will realize the value of their timeshare credits by vacationing with family and friends or spending credits on goods and services for their enjoyment, and not that they invest for resale.  Fry Dec., ¶ 11.  Trendwest's employment contracts prohibit employees from "represent[ing] [to prospective members] … that the purchase of vacation credits is a financial investment" and from "lead[ing] a prospective owner to believe that [Trendwest] will assist in any way in the rental or resale of the ownership."  *See id.*, Ex. G (at D995-999, D1196-1200).  Moreover, Trendwest's Required Business Practices Handbook, which is "designed to assist [Sales Representatives] in presenting [Trendwest's] products and services with accuracy, consistency, and integrity," reminds employees that "<u>Trendwest does not have a resale program.</u>"  *Id.*, Ex. E (at D966, 972) (emphasis added).  Vacation credits are not meant to be of value as an investment or a resale opportunity, as evidenced by the Business Practices Handbook, which contains several guidelines against selling Trendwest's product as an investment, including the admonition that "[a] timeshare purchase must not be represented as a financial investment" and "[t]he WorldMark product has been misrepresented if a consumer buys:

1    (a) for investment purposes; (b) to pay for the membership with rental income; [or] (c) <u>with the</u>

2    <u>hope of selling their ownership at a profit</u>." *Id.*, Ex. E (at D969, D971) (emphasis added).

3          Like its employee contracts and handbooks, Trendwest's customer contracts

4    emphasize the non-resale nature of the vacation credit products.  For example, contracts signed

5    between Trendwest and members include a clause entitled "Non-Investment Purchase" under

6    which purchasers represent that they are "purchasing Vacation credits for the purpose of

7    recreational and social use, and not for financial profit." *See id.*, Ex. F.  The contracts also clearly

8    state that in the event of transfer, Trendwest "will not repurchase the Vacation Credits" nor will

9    they "assist in locating a buyer." *Id.*  Because Trendwest intends for members to use their

10    vacation credits for personal enjoyment and has no "reasonable cause to believe" that its members

11    will at some point resell their credits, its sales qualify as "not for resale." 29 C.F.R. § 779.331;

12    *see Gieg*, 407 F.3d at 1049.  Coupled with Trendwest's demonstrated objective to sell its product

13    for personal enjoyment, the customers' agreement to use credits for "recreational and social"

14    purposes shows that, even if credits are later resold, Trendwest's sales are not for resale.

15          Trendwest's lack of a "reasonable cause to believe" that its members will resell

16    their credits is further demonstrated by the fact that very few of them actually do.  Only 1% of

17    Trendwest members transferred their credits in 2006. Fry Dec., ¶ 12. Because 100% of

18    Trendwest's annual dollar volume of sales are not made for resale, Fry Dec., ¶ 4 (100% of

19    Trendwest's sales come from the sale of vacation credits and the associated annual dues, which

20    are not made for the purpose of immediate resale), *Gieg*, 407 F.3d at 1048, Trendwest easily

21    meets the dollar volume requirement that more than 75% of its annual dollar volume of sales of

22    goods and service not be for resale.

23        **3.**      <u>Trendwest's Vacation Credits are Recognized as Retail in the Vacation</u>

24            <u>Ownership Industry</u>

25          The DOL takes the position that typically, a retail or service establishment is one

26    which (1) sells goods or services to the general public and is open to the general consuming

27    public, (2) serves the everyday needs of the community in which it is located, and (3) is at the

28    very end of the stream of distribution and does not take part in the manufacturing process. 29

1  C.F.R. §§ 779.318(a) & 779.319.

2           **a.**      <u>**Trendwest Sells and is "Open to" the General Public**</u>

3        Trendwest is "open" to, and sells vacation credits to, the general public.  All

4  interested customers are welcome to tour at a Trendwest office, and any customer who pays the

5  purchase price for the vacation credits becomes a "member."  Fry Dec., ¶ 13.  Trendwest uses no

6  other membership qualifications.  *Id.*  Because "membership in [Trendwest] may be purchased,

7  without restriction, by the general consuming public," Trendwest fits the model of businesses that

8  "qualify as a 'retail or service establishment,'" according to the DOL Field Operations Handbook,

9  § 21b03(a) (7/12/90).[6]  Six "core factors" listed in the DOL handbook, § 21b03(b) (7/12/90),

10  further support that Trendwest is "open to the public":

11      o   Trendwest's existing members do not have control over prospective members'

12         "admission for membership" – as stated above, any customer who pays the purchase

13         price for the vacation credits becomes a "member."  Fry Dec., ¶¶ 13-14.

14      o   Trendwest's existing members do not have control over revocation of the membership

15         of other members.  *Id.*, ¶ 14.

16      o   Prospective members do not need an existing members' recommendations to purchase

17         vacation credits and become a Trendwest member.  *Id.*

18      o   Trendwest does not limit the number of members in any way.  *Id.*

19      o   Trendwest does not maintain qualifications for membership such as "residence in a

20         particular location, position in a particular social or economic class, [or] good

21         reputation or character."  *Id.*

22      o   Trendwest members exercise little control over the operations of the establishment.

23         *Id.*

24        In highly similar factual circumstances, the DOL has determined that health and

25  athletic clubs qualify as retail establishments because they are member organizations open to the

26  public, they accept as a member anyone who pays the monthly fee, and they let non-members use

27  the club upon payment of a visitor's fee.  W&H Op. Ltr. Nov. 14, 2005, p. 1 (No. FLSA 2005-

28

---

[6] *See* Trendwest's Request for Judicial Notice, filed herewith, Ex. A.

1   53). Trendwest shares the same "open" qualities as health and athletic clubs in that they accept

2   any member who pays the requisite fees and allow non-members to stay at Trendwest resorts.

3   Fry Dec., ¶¶ 13-14. All of these factors demonstrate that Trendwest is "open to the public."

4                    **b.      Trendwest Serves the Community's Everyday Needs**

5                    According to the DOL, retail establishments are those which serve the "everyday

6   needs of the community" and provide "services for the comfort and convenience of [the] public."

7   29 C.F.R. §779.318(a). In analyzing that issue, the Middle District of Florida concluded that a

8   travel agency that specialized in planning cruises served the everyday needs of the community.

9   *Reich v. Cruises Only, Inc.*, No. 95-660 Civ. Orl. 19, 1997 U.S. Dist. LEXIS 23727, at *11 (M.D.

10   Fla. June 4, 1997). The court in *Cruises Only* noted that serving the everyday needs of the

11   community "should not be interpreted to mean that [the business in question] must be used by

12   everyone in the community on a daily basis," and concluded that companies in the vacation

13   industry serve the community's everyday needs. *See id.* at *12 (citing 29 C.F.R. § 779.320).

14   Similarly, the DOL has opined that health and athletic clubs are retail establishments that serve

15   the community because they "meet the needs of millions of Americans who want a convenient

16   place to exercise." W&H Op. Ltr. Nov. 14, 2005 (No. FLSA 2005-53) *and see* W&H Op. Ltr.

17   Mar. 10, 2006 (No. FLSA 2006-9) (also concluding that a health club/fitness facility services the

18   everyday needs of the community).

19                    Like travel agencies and athletic clubs, Trendwest meets the public's everyday

20   needs. Trendwest fills members' vacation lodging needs, and, like a multi-site athletic club,

21   offers many locations at which members can take advantage of the club's amenities. The

22   American Resort Development Association (ARDA)[7] also explains that "vacation ownership

23   provides the space and flexibility needed to easily accommodate families and larger traveling

24   parties." *See* Trendwest's Request for Judicial Notice, filed herewith, Ex. B ("A Consumer Guide

25   to Vacation Ownership," *available at* www.arda.org), p. 5.

26

27   _____

   [7] ARDA is a professional association of more than 1,000 corporate members that represents the resort
28   development and vacation ownership (or, "timeshare") industries. *See* "About ARDA,"
   http://www.arda.org (last accessed April 20, 2007).

                                                    DEFENDANT TRENDWEST RESORTS, INC.'S
                                                    MOTION FOR PARTIAL SUMMARY JUDGMENT
                                                    (CV-S-05-0605-RCJ-LRL)

c.     **Trendwest is at the End of the Distribution Stream**

Retail and service establishments, under DOL regulations, must be at the end of the distribution stream. 29 C.F.R. § 779.318. The DOL specifically recognizes that businesses which sell, for example, cars and furniture, are retail establishments. *See* 29 C.F.R. § 779.318(a). Such businesses sell a finished product and the possibility of resale does not contradict the fact that they are at the end of the distribution stream. The purpose of the DOL regulation appears to be to exclude from the "retail" definition wholesalers who sell not to the general public, but to other businesses. *See id.* Because Trendwest sells its product directly to people who use it to vacation, and is not a wholesaler, Trendwest also sits at the end of the distribution stream.

d.     **Trendwest's Vacation Credits are Recognized as Retail in the Industry**

Trendwest's vacation credit products are also recognized as retail sales in the "vacation ownership" industry. In determining whether the sales are recognized as retail sales in the particular industry, the DOL first identifies the particular industry to which the sale or service belongs. 29 C.F.R. § 779.323. Here, the industry is the vacation ownership industry (which is also known as the "timeshare" industry).

Having determined the particular industry, the DOL examines whether the sales are "recognized as retail in the industry." This inquiry looks to whether the industry possesses retail characteristics, or a "retail concept." The DOL has issued regulations specifically listing examples of establishments that lack a "retail concept" (29 CFR §§ 779.316 & 779.317) as well as a "partial list" of establishments that have a "retail concept" (29 CFR § 779.320). Examples of establishments that may be recognized as having a "retail concept" include hotels, "recreational camps," "tourists homes," and "trailer camps." 29 C.F.R. §§ 779.320, 779.382, & 779.383; *Martin v. Refrigeration School, Inc.*, 968 F.2d 3 (9th Cir. 1992).[8] Although not listed in the

---

[8] Among the types of establishments that the DOL has determined lack a "retail concept" is "real estate companies." 29 C.F.R. § 779.317; *Luther v. Z. Wilson, Inc.*, 528 F. Supp. 1166, 1173 (S.D. Ohio 1981) ("There is no retail concept in the real estate industry"). Attempting to avoid the retail exemption, plaintiffs allege in their Complaint that Trendwest is a real estate company. *See* Docket Nos. 1 (complaint in *Williams*), ¶ 12; 58 (first amended complaint in *Porter*), ¶ 3. As demonstrated herein, however, Trendwest does not sell real estate and is not a "real estate company" within the meaning of the DOL regulation. Fry Dec., ¶ 5.

regulations as "retail," health and athletic clubs are also "retail" in nature, according to the DOL. W&H Op. Ltr. Nov. 14, 2005 (No. FLSA 2005-53); W&H Op. Ltr. Mar. 10, 2006 (No. FLSA 2006-9).

Although the DOL has not listed timeshare companies in either its retail concept or non-retail concept regulations, the undisputed facts here confirm Trendwest's inclusion in the retail concept category. Trendwest shares some of the following characteristics with retail concept establishments like trailer camps, hotels, and health clubs. Like trailer camps and hotels, Trendwest resorts meet the short-term lodging needs of members, and, like health clubs, they provide many on-site services and amenities for members' use and enjoyment. The "retail" characteristics include the following:

- o Trendwest accepts as a member anyone who pays the membership fees; it does not limit the number of members; and it does not maintain membership qualifications. Fry Dec., ¶¶ 13-14.

- o Members may request specific rooms, but may only book the room if it is available at the requested time. *Id.,* ¶ 6, Ex. B, p. 21.

- o Members may not keep any personal property in the unit after they check out. *Id.*, Ex. B, p. 24.

- o Members may not bring animals or pets onto resort properties, must refrain from smoking in designated areas, and must abide by other resort regulations. *Id.*

- o Members do not have control over the furnishings or decorating in any unit and must reimburse Trendwest for any damage to the unit and its contents. *Id.*

- o Members must observe occupancy limits that apply to the units. *Id.*, Ex. B, p. 23.

- o Trendwest reserves the right to enter any unit, at any time, as necessary. *Id.*, Ex. B, p. 24.

- o Trendwest members can use all of the services and amenities available at the resort, including swimming pools, spas, fitness rooms, arcade games, boutiques, business centers, computer and internet terminals, childcare, and evening entertainment. *Id.*, Exs. A & C.

1   ○   Trendwest allows non-members to use the resort services and amenities.  Fry Dec., Ex.

2       B, p. 24.

3   Trendwest's product and services show that the vacation ownership (timeshare) industry has a

4   "retail concept."

5       **B.**   **The Rate of Pay Issue will be Decided for Each Plaintiff Separately**

6           Although Trendwest does not seek summary judgment on the "rate of pay" issue,

7   the following discussion of this requirement under the "retail sales" exemption shows that once

8   the Court settles the "retail or service establishment" issue, the inquiry into whether each FLSA

9   plaintiff meets the exemption for relevant time periods becomes primarily a matter of each

10  plaintiffs' payroll records.  To be exempt under the Retail Sales exemption, an employee's

11  "regular rate" of pay must exceed 1.5 times the applicable minimum wage (or $7.73)[9] for every

12  hour worked in a workweek in which overtime hours are worked.  29 U.S.C. § 206(i)(1).  The

13  "regular rate" calculation includes all pay, including commissions.  *Id.*  In cases involving

14  commissioned employees, as here, courts look to long periods of time – up to one year, and

15  longer – to determine the regular rate.  *See Schwind v. EW & Assocs.*, 371 F. Supp. 2d 560, 567-

16  568 (S.D.N.Y. 2005) (averaging commissions over one year); *Gatto v. Mortgage Specialists of*

17  *Illinois*, 442 F. Supp. 2d 529, 537 (N.D. Ill. 2006) (averaging commissions over 58 weeks).  The

18  Seventh Circuit explained the reason for calculating the regular rate over an extended period of

19  time: "Commission salesmen have fluctuating hours and income, and it is unlikely that Congress

20  meant to require employers to pay overtime in the lean weeks when the fat weeks more than make

21  up." *Walton v. United Consumers Club*, 786 F.2d 303, 307 (7th Cir. 1986) (citing *Triple "AAA"*

22  *Co. v. Wirtz*, 378 F.2d 884, 887 (10th Cir. 1967)).  Thus, if the "regular rate" were calculated on a

23  yearly basis, a Sales Rep would need to be paid only approximately $10,000 - $16,000 per year to

24  meet this requirement.[10]

---

25  [9] The applicable federal minimum wage is $5.15 per hour.  One and one-half times the federal minimum
26  wage equals $7.73 per hour.

27  [10] The reason this number is an approximation is because Sales Reps work different numbers of hours per
    week.  If a Sales Rep averaged 25 hours per week for a full year, 1.5 times the minimum wage would be
    approximately $10,000 per year ($7.73 x 25 x 52).  If a Sales Rep averaged 40 hours per week for a full
28  year, 1.5 times the minimum wage would be approximately $16,000 per year ($7.73 x 40 x 52).

1    By the nature of Trendwest's business, a significant number of Sales Reps will

2    meet the 1.5 pay requirement.  This is most easily explained by examining a two-week  pay

3    period, although, as stated above, Sales Reps' "regular rate" should be calculated on a yearly or

4    other extended basis.  On all sales they make, Sales Reps receive a minimum commission of $100

5    per 1,000 credits sold.  Declaration of Kristen Peacock ("Peacock Dec."), ¶ 3.  For any sale of

6    Trendwest's annually renewing vacation credits, the purchaser must buy a minimum of 6,000

7    credits.  *Id.*  At the minimum commission rate, Sales Reps earn at least $600 on a minimum

8    vacation credit purchase.  (Sales Reps frequently earn commissions higher than the minimum;  for

9    example, Sales Reps earn a commission of $920 on a sale of 8,000 credits, and $1,300 on a sale

10   of 10,000 credits. *See* Peacock Dec., ¶ 3.)  Thus, even if a Sales Rep makes only one sale in a

11   week at the minimum commission rate, the $600 commission from that single sale would

12   guarantee that the Rep earned 1.5 times federal minimum wage for each hour worked, up to 77

13   hours for the week.[11]  Moreover, a single $600 commission would also cover an entire two-week

14   pay period, if the Sales Rep did not work more than 77 hours during that two-week pay period.

15   Sales Reps who do not make a sale do not work overtime, and, thus, do not have to meet the

16   "retail" compensation requirement.[12]

17   Summary judgment is appropriate even if some plaintiffs may ultimately be able to

18   prove that they did not earn overtime due to them for certain time periods.  *See Viciedo v. New*

19   *Horizons Computer Learning Center of Columbus, Ltd.,* 246 F. Supp. 2d 886, 895-96 (S.D. Ohio

20   2003) (granting partial summary judgment upon finding that for all but three plaintiffs in certain

21   weeks, plaintiffs failed to raise a general issue of material fact with respect to this element of the

22   retail exemption).  Resolution of the "retail or service establishment" issue will substantially

23
[11] The federal minimum wage is $5.15 per hour, and one and one-half times the federal minimum wage
24   equals $7.73 per hour.  77 hours times $7.73 equals $595.21.

25   [12] Typically, a Sales Rep may work more than 40 hours per week only if the Sales Rep works a full week
     and stays late to close a sale generated from the last tour of the day.  *See* Decs. from employees J.D.
26   Morris, Docket No. 111 at ¶¶ 9-12; S. Cralley, Docket No. 112 at ¶¶ 11-12; L. Acosta, Docket No. 113 at ¶
     5; and D. Hickman, Docket No. 114 at ¶ 4 – all filed in support of Docket No. 108, Trendwest's
27   Opposition to Plaintiffs' Motion for Circulation of Notice Beyond California and Nevada.  Thus, in this
     case, the retail exemption, and its pay requirement of 1.5 times minimum wage for hours worked in any
28   week where the employee worked <u>overtime</u>, *see* 29 U.S.C. § 206(i)(1), may come into play only if the
     Sales Rep stayed late to close a sale.

1  streamline the calculation of individual plaintiffs' potential overtime damages, if any.

2      **C.**    **Trendwest will Show That More Than 50% of Total Earnings in a
3  Representative Period Come From Commissions**

4      The Retail Sales exemption was intended for employers like Trendwest, whose

5  employees' compensation is based on large commissions from "big-ticket sales." 29 C.F.R. §

6  779.414.  To meet this exemption, more than half the employee's total earnings in a

7  representative period (not less than one month) must consist of commissions.[13]  29 U.S.C. §

8  206(i)(1).  With the exception of VLOs, plaintiffs claim that all Trendwest Sales Representatives

9  are paid on a commission-only basis. *See* Docket. No. 24, Dec. of Bartley Porter, Ex. A, ¶¶ 1-2;

10  Dec. of Felix Romero, Ex. B, ¶¶ 1-2; Dec. of Ronnie Williams, Ex. C, ¶¶ 1-2; Dec. of Lisa Fox,

11  Ex. D, ¶¶ 1-2; Dec. of Paul H. LeClair, Ex. E, ¶¶ 1-2; Dec. of Shirley Fuery, Ex. F, ¶ 2 (noting

12  that before becoming a Developer Representative (or VLO) she was paid on a commission-only

13  basis); Dec. of Tamer Mamou, Ex. G, ¶ 5.  Since early 2005, Trendwest's "Steady Pay" program

14  has ensured that each Sales Representative receives a guaranteed salary for every pay period,

15  either in commissions, or a Steady Pay payment, or both. *See* Peacock Dec., ¶ 3, Ex. A.

16  Trendwest will ultimately show that a substantial number of FLSA plaintiffs earn more than 50%

17  of their compensation from commissions within a representative period.

18  ///

19  ///

20  ///

21  ///

---

22  [13] To determine the proper "representative period," the regulation states that it is generally "a period which
23  typifies the total characteristics of an employee's earning pattern in his current employment situation, with
respect to the fluctuations of the proportion of his commission earnings to his total compensation." 29
24  C.F.R. § 779.417(a).  More specifically, the regulation requires that the "representative period" be "as
recent a period, of sufficient length [...] to fully and fairly reflect all such factors as can practicably be
25  used." 29 C.F.R. § 779.417(b).  "Thus, as a general rule, if a month is long enough to reflect the necessary
factors, the most recent month for which necessary computations can be made prior to the payday for the
26  first workweek in the current month should be chosen.  Similarly, if it is necessary to use a period as long
as a calendar or fiscal quarter year to fully represent such factors, the quarterly period used should
27  ordinarily be the one ending immediately prior to the quarter in which the current workweek falls." *Id.*
Also, the "representative period" must be one which is "representative with respect to the particular
28  employee for whom the exemption is sought, and the appropriateness of the representative period for that
employee will always depend on his individual earning pattern." 29 C.F.R. § 779.417(d).

1   **V.      CONCLUSION**

2          For the reasons stated above, this Court should grant Trendwest's motion for partial

3   summary judgment and hold that Trendwest is a "retail or service establishment" for purposes of

4   the "retail sales" exemption of the FLSA.

5

6   Dated: May 22, 2007                          LYNNE C. HERMLE
                                                 JOSEPH C. LIBURT
                                                 JESSICA R. PERRY
7                                                LEAH L. SPERO
                                                 ORRICK, HERRINGTON & SUTCLIFFE LLP
8

9                                                _____/s/_____
10                                                          Joseph C. Liburt
                                                         Attorneys for Defendant
11                                                      TRENDWEST RESORTS, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28