1

2

3

4

5                              **UNITED STATES DISTRICT COURT**

6                                    **DISTRICT OF NEVADA**

7

8    RONNIE WILLIAMS, et al.,              )
                                           )              2:05-CV-0605-RCJ-LRL
                  Plaintiffs,              )
9                                          )
10         vs.                             )              **ORDER**
                                           )
     TRENDWEST RESORTS, INC.,              )
11                                         )
                  Defendant.               )
12   _____)

13          This matter comes before the Court on Defendant's Motion for Judgment on the

14   Pleadings (#122), Defendant's Motion for Partial Summary Judgment (#124), Defendant's

15   Motions to Strike (#123, 143), and Plaintiff's Motion to Strike (#139).  Plaintiffs comprise a

16   class of sales employees of Trendwest Resorts, Inc., who seek unpaid overtime wages under the

17   Fair Labor Standards Act and state law.  Defendant now seeks to limit the scope of their claims

18   through judgment on the pleadings, and seek adjudication as a matter of law that Trendwest

19   qualifies under the retail establishment exemption of the FLSA.  The Court has considered the

20   motions, the pleadings on file, and oral argument on behalf of all parties.  Pursuant to the

21   following analysis, Defendant's Motion for Judgment on the Pleadings is *granted in part and*

22   *denied in part*.  Defendant's Motion for Partial Summary Judgment is *denied*.  The Motions to

23   Strike are all denied.

24

25

1

**BACKGROUND**

2          Plaintiffs are a class of sales employees of Trendwest Resorts, Inc., who bring a

3  collective action for unpaid overtime wages and other violations under § 216(b) of the Fair Labor

4  Standards Act ("FLSA") and state law.  On April 19, 2005, the original group of Plaintiffs filed

5  their complaint in state court as *Williams, et al. v. Trendwest Resorts, Inc.* (*See* #1, *Williams*

6  Complaint.)  Defendant removed the case to this Court on May 13, 2005.  On October 12, 2005,

7  this Court ordered consolidation of the *Williams* case with FLSA claims in *Wiley, et al. v.*

8  *Trendwest Resorts, Inc.*, which were pending in United States District Court of Northern

9  California.  (#19.)  On June 20, 2006, the Court issued an order allowing Plaintiffs to amend

10  their complaint in *Wiley* to add California state-law claims (and substituting Porter as the named

11  Plaintiff for Wiley).  (#66.)

12          In these consolidated cases, Plaintiffs, a group of Trendwest sales and administrative

13  employees, raise three sets of claims: (1) FLSA claims for overtime pay and minimum wage

14  violations under 29 U.S.C. §§ 207(a), and 213(a); (2) Nevada state law claims for overtime pay,

15  minimum wage violations, rest period violations, and waiting time penalties under NRS § 608;

16  and (3) California state law claims for overtime pay, charge back restitution, unfair business

17  practices, failure to reimburse expenses, and waiting time penalties.

18          On December 7, 2006, this Court entered an order adopting the Magistrate's

19  recommendations in granting Plaintiff's Motion for Circulation of Notice.  (#106.)  However,

20  the Court limited notice to a putative class of members in California and Nevada.  Thus far, it

21  appears 194 class members have opted into the FLSA conditionally certified action.  In addition

22  to their FLSA collective action claims, Plaintiffs seek class certification on state-law claims

23  under Federal Rule of Civil Procedure 23.  The Rule 23 claims include: (1) an "Overtime class"

24  that seeks relief under California Business & Professions Code 17200; (2) a class of similarly

25

situated California persons seeking relief for unconscionable chargebacks under California Civil Code Section 1670.5 and California Business & Professions Code Section 17200; and (3) a class of similarly situated Nevada persons seeking relief for unlawful decrease in compensation and rest time compensation under NRS § 608.091 and § 608.100.

Defendant now brings a Motion for Judgment on the Pleadings (#122), seeking dismissal of three of Plaintiff's claims. Defendant also seeks a summary judgment ruling that it qualifies for the retail establishment exemption under the FLSA. Defendant and Plaintiffs bring three motions to strike various evidence submitted with the pleadings (#123, 139, 143).

**I.**   **Judgment on the Pleadings**

    **A.**   **Judgment on the Pleadings Standard**

"Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Torbet v. United Airlines, Inc.*, 298 F.3d 1087, 1089 (9th Cir. 2002); *see also Int'l Techs. Consultants, Inc. v. Pilkington PLC*, 137 F.3d 1382, 1384 (9th Cir. 1988) (holding that a claim cannot be dismissed under Rule 12© if the court finds that, taking all allegations in the pleadings as true, plaintiff is entitled to a remedy). The standard to be applied on a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12© is "virtually identical" to the standard for evaluating a motion to dismiss under Rule 12(b)(6). *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987). Although the plaintiff "enjoys the benefit of all inferences that plausibly can be drawn from well-pleaded allegations [in] the complaint," a defendant's motion should be granted when it "appears beyond doubt that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief." *Id.*

1

**B.       Analysis**

2

Defendants now bring a Motion for Judgment on the Pleadings (#122), seeking dismissal

3

of three of Plaintiff's claims: (1) the first cause of action in *Wiley* for violation of California

4

wage laws, (2) the third claim in *Wiley* for unconscionable chargebacks, and (3) the second cause

5

of action in *Wiley* for violations of Nevada wage laws.

6

**1.       California Business and Professions Code § 17200 Claims**

7

Plaintiffs repackage their underlying FLSA allegations as violations of California

8

Business and Professions Code Section 17200.  Section 17200 "borrows" violations of other

9

laws and treats them as independently actionable under California law.  *Farmers Ins. Exch. v.*

10

*Superior Court*, 2 Cal. 4th 377, 383 (1992).  Accordingly, Section 17200 provides legal causes

11

of action for plaintiffs to vindicate rights created by other statutes, such as the FLSA overtime

12

provisions, but it does not create independent substantive rights.  *Id.*  Plaintiffs' Section 17200

13

claim is thus identical in substance to their FLSA claim, although the procedural rules governing

14

the California statute would apply a four year limitations period and create a class opt out

15

procedure under Federal Rule of Civil Procedure 23, instead of the FLSA's opt in standard.

16

Defendants assert that Plaintiffs are inappropriately attempting to bypass the FLSA statute of

17

limitations and opt in procedures by litigating their claims outside of the FLSA's framework.

18

The courts are split on the issue of whether a plaintiff can bring simultaneous FLSA and

19

state collective actions for the same underlying labor allegations.  A handful of courts hold that

20

the FLSA's opt in process does not preclude state laws covering the same state law opt out

21

procedure.  For example, in *Harris v. Investor's Business Daily, Inc.*, the California Court of

22

Appeals analyzed the conflict and concluded a cause of action alleging violations of the FLSA

23

under California Business Code Section 17200 was not preempted by the FLSA opt in

24

requirement.  41 Cal. App. 4th 28, 32-36 (Cal. App. 2006).  The *Harris* court relied on the

25

Page 4 of  16

1    FSLA's savings clause, which states that nothing in the Act "shall excuse noncompliance with

2    any Federal or State law or municipal ordinance establishing [stricter labor laws]." *Id.* at 32

3    (quoting 29 U.S.C. § 218(a)).  Noting that the savings clause seemed to embrace broader state

4    law actions, the court held that the FLSA did not preempt Section 17200 claims.  *Id.* at 33-34.

5    Other federal courts have likewise permitted dual FLSA and state collective actions.  *See, e.g.,*

6    *Lindsay v. Government Employees Ins. Co.*, 448 F.3d 416, 424-25 (D.C. Cir. 2006) (holding that

7    district court can exercise supplemental jurisdiction over similar Rule 23 opt out class action);

8    *De Asencia v. Tyson Foods*, 342 F.3d 301, 309-10 (3d Cir. 2003) (same); *Avery v. City of*

9    *Talladega*, 24 F.3d 1337, 1348 (11th Cir. 1994) (holding that state law claim overlapping with

10   FLSA claim is not preempted by FLSA).  In all of these decisions, the courts recognize the

11   tension between the FLSA opt in procedure and state law certification under Rule 23's opt out

12   process, but nevertheless hold that the FLSA's savings clause indicates no congressional intent

13   to preempt state laws.

14        Other courts conclude that it contravenes the purposes of the FLSA to allow simultaneous

15   FLSA and Rule 23 collective actions.  State law class actions based on substantive FLSA claims

16   are governed by Rule 23's opt out procedure, whereas FLSA suits provide for participation

17   through an affirmative opt in process.  Thus, allowing both processes to occur at the same time

18   allows for the possibility that plaintiffs who have chosen to not opt into the FSLA class are

19   nevertheless included in the broader Rule 23 state class. Additionally, the Rule 23 class actions

20   are governed by a four year limitations period, rather than the shorter FLSA period.  Noting this

21   tension in a California wage collective action, one federal court refused to certify a

22   . . .

23   . . .

24

25                              Page 5 of  16

Rule 23 class based on FLSA claims, holding that allowing both causes of action raised jurisdictional problems:

> Should only a few plaintiffs opt into the FLSA class after the court were to certify a Rule 23 state law class, the court might be faced with the somewhat peculiar situation of a large number of plaintiffs in the state law class who have chosen not to prosecute their federal claims. The court might then be in a position in which declining supplemental jurisdiction would be appropriate, given that the state law claims could be said substantially to predominate over the federal claims. . . . Based on these considerations, it is evidence that certifying a Rule 23 class would exacerbate or create numerous problems.

*Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 469-70 (N.D. Cal. 2004). Another district court likewise dismissed Pennsylvania minimum wage state law claims because such claims were incompatible with the opt in procedure mandated by the FLSA. *See Otto v. Pocono Health System*, 457 F. Supp. 2d 522 (M.D. Penn. 2006). There, the court concluded,

> It is clear that congress labored to create an opt-in scheme when it created Section 216(b) [of the FLSA] specifically to alleviate the fear that absent individuals would not have their rights litigated without their input or knowledge. To allow an Section 216(b) opt-in action to proceed accompanied by a Rule 23 opt-out state law class action claim would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement.

*Id.* at 523-24. A number of other recent decisions have followed this reasoning and rejected state law Rule 23 claims grounded in FLSA violations. *See, e.g., Moeck v. Gray Supply Corp.*, 2006 WL 42368 at *5 (D. N.J. 2006) (allowing plaintiffs "to circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA would undermine Congress's intent to limit these types of claims to collective actions"); *McClain v. Leon's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004) (same); *LaChappelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975) (stating that Section 216(b) and Rule 23 are "mutually exclusive and irreconcilable").

The Court follows the latter line of cases and finds that the class action mechanisms of the FLSA and Rule 23 are incompatible.  It would be inappropriate to permit Plaintiffs' attempt to circumvent the restrictive opt-in requirements of the FLSA by utilizing the borrowing statute of California Business and Professions Code Section 17200.  In this case, notice was sent to 1,578 people working at Trendwest locations in California and Nevada but only 194 putative class members have opted in.  Through the Section 17200 opt out action, Plaintiffs seek to bring into the case under Rule 23 the other 1,100 Californians who failed to affirmatively opt into the FLSA action.  They also seek to escape the stricter FLSA statute of limitations by taking advantage of the Section 17200 four-year limitations period.  Therefore, permitting Plaintiffs to use Section 17200 as a vehicle for their FLSA claims would violate Congress's intent to manage FLSA claims through the stricter opt in process.  "The policy behind requiring FLSA plaintiffs to opt in to the class would largely be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through a vehicle of calling upon similar . . . statutes that lack such an opt-in requirement." *Leuthold*, 224 F.R.D. at 470.  Therefore, Plaintiffs Section 17200 claims are dismissed.

## 2.      Unconscionability Claim

Defendants also seek dismissal of Plaintiffs' third claim in *Wiley*, for unconscionable charge backs in violation of California Civil Code Section 1670.5.  This provision states that a court may refuse to enforce any contract it finds "to have been unconscionable at the time it was made."  Cal Civ. Code. Section 1670.5.  California courts hold that Section 1670.5 provides "only a defense to contract enforcement." *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 1539 (2003).  Thus, the statute "does not support bringing an affirmative cause of action thereunder for including an unconscionable clause in a contract." *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 766 (1989).  One court did conjecture that California

1  Business & Professions Code Section 17200 might create an affirmative cause of action under

2  Section 1670.5, but did not expressly so hold.  *Cal. Grocers Ass'n, Inc. v. Bank of America*, 22

3  Cal. App. 4th 205, 217 (1994) (reversing trial court on other grounds).  Plaintiffs cite no case that

4  establishes a right to use Section 1670.5 for affirmative relief.  The Court finds that Section

5  1670.5 does not create an offensive cause of action and dismisses Plaintiffs' unconscionable

6  charge back claim under California law.

7  **3.      Violations of NRS 608.100 and NRS 608.109**

8  Defendants seek dismissal of Plaintiffs' second claim in the *Williams* complaint for

9  violation of NRS 608.019 and 608.100.  Section 608.100 makes it unlawful for an employer to

10  "[p]ay a lower wage, salary or compensation to an employee than the amount that the employer

11  is required to pay to the employee by virtue of any statute or regulation."  NRS 608.100(1)(a).

12  NRS 608.100(1)(b), like California Section 17200, makes the violation of any wage statute a

13  violation of Nevada law.  NRS 608.019 sets forth rules governing meal and rest periods.

14  Defendants contend that these Nevada statutes do not create private rights of action for Plaintiffs

15  to sue upon.

16  This Court has decided this same issue in prior litigation involving both sets of counsel.

17  In *Brown v. Terrible Herbst, Inc.*, 2:05-CV-0008-RCJ-LRL, this Court held that NRS 608.100

18  did provide a private right of action to recover unpaid wages, but NRS 608.019 did not create

19  a private cause of action for violations of meal and rest periods.  (#22 at 1-2.)  In finding a

20  private right of action under NRS 608.100, this Court relied upon the Nevada Supreme Court's

21  decision in *U.S. Design & Construction Corp. v. Int'l Brotherhood of Electrical Workers*, 50

22  P.3d 170 (2002), where the court held Nevada's entire statutory scheme of labor regulation was

23  . . .

24

25  Page 8 of  16

designed to encourage private enforcement. *Brown*, #22 at 2. However, the Court also found

that NRS 608.019

> is a general workplace regulatory statute and does not impose a wage payment
> obligation on an employer. The Court finds as a matter of law that no private
> cause of action exists for enforcement of NRS 608.109. . . . [N]o private cause
> of action exists, as the legislature has prescribed a specific penalty for violation
> of this workplace regulatory statute and provided enforcement through the office
> of the Nevada Labor Commissioner.

*Id.* In accordance with this Court's prior ruling and analysis, Plaintiffs' claim under NRS

608.109 should be dismissed, but the NRS 608.100 claim should survive.

### C.    Judgment on Pleadings Summary

Plaintiffs' first cause of action in *Wiley* for violation of California Business & Professions

Code Section 17200 should be dismissed as it inappropriately attempts to repackage the FLSA

claims in a manner to avoid the opt-in restrictions. The third claim in *Wiley*, for unconscionable

charge backs in violation of California Civil Code Section 1670.5, should be dismissed as

Section 1670.5 does not create an affirmative cause of action. Finally, pursuant to this Court's

prior ruling in a related case, Plaintiffs NRS 608.019 claim should be dismissed and the NRS

608.100 claim should survive.

## II.    Partial Summary Judgment

### A.    Standard of Review

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute

as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is proper if the evidence shows that there

is no genuine issue as to any material fact and the moving party is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where

reasonable minds could differ on the material facts at issue, summary judgment is not

appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  As summary judgment allows a court to dispose of factually unsupported claims, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazari*, 84 F.3d 1194, 1197 (9th Cir. 1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, the party opposing the motion may not rest on the mere allegations or denials of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When the nonmoving party bears the burden of a claim or defense at trial, the moving party can meet its initial burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 325.  Conversely, when the moving party bears the burden of proof at trial, then it must establish each element of its case at summary judgment.

**B.    Analysis**

Defendant seeks summary adjudication that it is a "retail or service establishment" within the meaning of the FLSA retail sales exemption.  Plaintiffs' claims for overtime pay under the FLSA raise the issue of whether Plaintiffs are covered under the FLSA overtime provisions, or whether they fall under one of the overtime exemptions, such as retail sales.  The retail exemption from the FLSA contains three requirements:

(1)  the employee must be employed by a retail or service establishment;

(2)  the employee's regular rate of pay must exceed one and one-half times the applicable minimum wage for every hour worked in a workweek in which the overtime hours are worked; and

(3)  more than half the employee's total compensation in a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i).  If an employer and employee fulfill the three requirements, then they are excluded from the protections of Section 207(a).  In this motion, Trendwest seeks summary judgment on the first requirement – that it is a "retail or service establishment."  It asserts that once the Court determines this issue as a matter of law, the latter two prongs of the Section 207(i) can be settled by the trier of fact.

### 1.    Defendant's Burden

The Defendant have the burden of proving it is a "retail or service" business entitled to the FLSA exemption in 29 U.S.C. § 207(i).  *See Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983).  This burden is strict, as the employer must satisfy the court that it "plainly and unmistakably" fits within the exemption.  *Homemakers Home and Health Care Services, Inc. v. Carden*, 538 F.2d 98, 101 (6th Cir. 1976) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

### 2.    Retail Establishment Test

To qualify as a retail or service establishment under the FLSA, the following requirements must be met: (1) Trendwest must engage in the sale of goods or services, (2) at least 75% of the annual dollar volume of sales of goods or services must not be for resale, and (3) the sales must be recognized as retail sales or service in the particular industry.  29 C.F.R. § 779.313.  Additionally, the retail sales exemption is only available to "traditional" local retail or service establishments.  29 C.F.R. § 779.315.  The Department of Labor ("DOL") regulations provide further guidance as to what characteristics and evidence are relevant to this determination.  Based on the present record, Trendwest is not a retail or service establishment under the FLSA and its motion for partial summary judgment is denied.

### a.    Traditional Retail Establishment

A preliminary requirement to being an FLSA retail business is that the employer must be a "traditional" retail or service establishment.  29 C.F.R. § 779.315. Under the DOL guidelines, an employer is a traditional retail establishment when it: (1) sells goods or services to the general public and is open to the general consuming public, (2) serves the everyday needs of the community in which it is located, and (3) is at the end of the stream of distribution of the retail process.  29 C.F.R. § 779.318 and 779.319.  Trendwest is open to the general public as it offers vacation credits to any customer in the public and uses no membership qualifications. Courts have broadly interpreted the second requirement, even holding that those in the vacation industry serve the community's everyday needs. *See Reich v. Cruises Only, Inc.*, 1997 U.S. Dist. LEXIS 23727 at *9-11 (M.D. Fla. 1997).  Under this liberal standard, Trendwest seems to serve the community's needs by offering vacation services.

Finally, a retail establishment must be "at the very end of the stream of distribution" and must "not take party in the manufacturing process." 29 C.F.R. § 779.318(a).  This requirement that retail businesses not engage in the creation of the product is strictly applied.  *See Reich v. Delcorp*, 3 F.3d 1181, 1183-84 (8th Cir. 1993).  Plaintiffs contend that Defendant cannot be classified as a retail establishment because it does not exist solely "at the end of the stream of distribution."  They note that Defendant essentially "manufactures" the product it sells by developing the real estate and business it sells to the public.  While Trendwest argues it merely shares timeshare vacations, the record reveals that purchasers really buy broader ownership interests, which brings both vacation and general corporate ownership rights.  The purchaser's contract states that owners of vacation credits are entitled "to vote on major Club decisions," and to "participate in the corporate ownership of the real estate and other assets of the Club."  (Ex. F to #125.)  These ownership interests are fully transferable and of perpetual duration.  The

owners elect their own board of directors and participate in making rules and decisions. In the event Worldmark dissolves its assets, the assets are divided among the owners in proportion to their interests. (Ex. A and B to #138.) These facts show that Trendwest does not operate as a "traditional" retail establishment solely "at the end of the stream of distribution." Instead, vacation credit owners receive a stake in the company's assets and management. While vacation packages are certainly central to the venture, owners receive non-retail interests that operate much like real estate. Thus, Trendwest is not a "traditional" retail business and it should not be afforded the retail business exemption.

### b.       Sale of Goods or Services

After the preliminary showing that it is a traditional retail establishment, the first requirement of the retail exception is that the employer must engage in the sale of goods or services. The FLSA defines goods as "goods, wares, products, commodities, merchandise, or articles or subjects of commerce of any character." 29 U.S.C. § 203(i). Service establishments are defined as providing "services for the comfort and convenience of [the] public in the course of its daily living." 29 U.S.C. § 779.318(a).

Trendwest argues that owners buy products and rights comparable to those offered by health and athletic clubs, whose memberships grant customers the right to use the facilities. The DOL has acknowledged that health and athletic clubs qualify for the FLSA retail exemption. W & H Op. Ltr. Nov 14, 2005 (No. FLSA 2005-53). Trendwest analogizes that purchasers of vacation credits receive similar benefits, such as vacation facilities, reservation services, travel booking, housecleaning services, and so forth. Defendant also notes that services provided by travel agencies can be considered retail in nature. *See Reich v. Cruises Only, Inc.*, 1997 U.S. Dist. LEXIS 23727 at *9-11 (M.D. Fla. 1997).

Defendant's arguments are strained.  While timeshare interests do share some characteristics with health clubs, they are not goods within the meaning of the FLSA.  Buyers purchase the right to yearly vacation credits, but also receive, as discussed previously, ownership in the larger corporate interests of Worldmark.  These rights are of perpetual duration and include broader real estate interests.  Furthermore, while Trendwest does offer vacation services, these are not "services for the comfort and convenience of [the] public in the course of its daily living." 29 U.S.C. § 779.318(a).  Those services which Trendwest owners receive are part of the purchasers' larger ownership interests.  Therefore, Defendant is not selling goods or services under the FLSA.

### c. 75% of Sales of Goods or Services Must Not be for Resale

The second requirement for an employer classifying as a retail establishment is that at least 75% of the annual dollar volume of sales of goods or services must not be for resale.  A sale for resale is a sale "made for the purpose of immediate resale."  *Gieg v. DDR, Inc.*, 407 F.3d 1038, 1048 (9th Cir. 2005).  Furthermore, a sale is made for resale "where the seller knows or has reasonable cause to believe that the goods or services will be resold . . . . [I]f at the time the sale is made, the seller has no knowledge or reasonable cause to believe that the goods are purchased for the purpose of resale, the fact the goods later are actually resold is not controlling." 29 C.F.R. § 779.331.  In this case, Trendwest owners receive interests of perpetual duration that are transferable.  However, it appears the primary purpose of the vacation credit purchase is to enjoy timeshare vacationing, not to resell the interest.  Trendwest counsels its employees that it has "no resale program." Ex. E to #124.  The company's employment contracts also prohibit employees from representing to purchasers "that the purchase of vacation credits is a financial investment" and from "lead[ing] a prospective owner to believe that [Trendwest] will assist in any way in the rental or resale of the ownership." *Id.*  It thus appears that Trendwest intends

Page 14 of  16

1   purchasers to actually use the vacation credits, and not hold them as traditional investments for

2   resale.  Trendwest avers that only 1% of members transferred their credits in 2006, meaning that

3   far more than 75% of its annual dollar volume of sales is not for resale.

4                    **d.     Recognized as Retail in the Industry**

5           The final requirement for a retail establishment is that it be recognized as a retail

6   institution within the company's industry.  This inquiry looks at whether the industry of the

7   employer possesses a "retail concept."  The DOL has issued regulations specifically listing

8   examples of establishments that have and lack a retail concept.  29 C.F.R. § 779.  Examples of

9   industries possessing a retail concept include hotels, recreational camps, tourist homes, and

10  trailer camps.  *Id*.  Utility providers, lawyers, physicians, and real estate companies have been

11  held to lack a retail concept.  *Id.*  Timeshare companies are not listed as either having or lacking

12  the requisite retail concept.  However, because Trendwest owners receive real estate interests,

13  in addition to vacation services, Trendwest cannot be considered part of an industry possessing

14  a retail concept.

15                   **3.     Summary of Retail Exemption Analysis**

16          To qualify as a retail or service establishment under the FLSA, the following

17  requirements must be met: (1) Trendwest must engage in the sale of goods or services, (2) at

18  least 75% of the annual dollar volume of sales of goods or services must not be for resale, and

19  (3) the sales must be recognized as retail sales or service in the particular industry.  29 C.F.R.

20  § 779.313.  Here, there are at least remaining questions of fact as to whether Trendwest has

21  satisfied these requirements, and the motion must therefore be denied.  Trendwest does not

22  appear to engage in the sale of goods or services and is not recognized as a retailer within its

23  industry.  Defendant has also failed to establish a sufficient record to establish each of the

24  elements of a retail establishment.  In particular, Trendwest cannot be a retailer because it

25                                  Page 15 of  16

develops the product it sells.  Therefore, Defendant's request for summary adjudication that it falls within the retail sale exemption of the FLSA is denied.

**CONCLUSION**

Pursuant to the previous analysis, IT IS HEREBY ORDERED that Defendant's Motion for Judgment on the Pleadings (#122) is *granted in part and denied in part*. Plaintiffs first cause of action in *Wiley* for violation of California Business & Professions Code Section 17200 is dismissed.  The third claim in *Wiley*, for unconscionable charge backs in violation of California Civil Code Section 1670.5, is also dismissed.  Pursuant to this Court's prior ruling in a related case, Plaintiffs NRS 608.019 claim is dismissed and the NRS 608.100 claim survives.

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment (#124)  is *denied*.  Defendant has not met its burden in producing sufficient evidence that it meets the applicable test for establishing it is a retailer under the FLSA.

IT IS FURTHER ORDERED that the Motions to Strike (#123, 139, 143) are all denied.

DATED:        August 20, 2007.


_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE